**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

_____ )
KRISTIN LEVY,                                               )
                                                           )
                        Plaintiff                          )
                                                           )
            v.                                             )         Docket No:_____
                                                           )
                                                           )         **JURY TRIAL**
                                                           )         **DEMANDED**
NYC  HEALTH + HOSPITALS  AND                               )
MEDICAL STAFFING SERVICES, INC.                            )
                                                           )
                                                           )
                        Defendants                         )
_____ )

## <u>COMPLAINT AND JURY DEMAND</u>

### <u>PARTIES</u>

1.      The plaintiff, Kristin Levy ("Ms. Levy" or "Plaintiff"), is a female resident of the

State of New York residing at 3239 Seymour Avenue, Bronx, NY 10469.

2.      Defendant NYC Health + Hospitals (the "Hospital") is a public benefit

corporation created by the New York State Legislature to operate New York City's municipal

hospitals.

3.      Defendant Medical Staffing Services, Inc. ("Medical Staffing") is a foreign

corporation with its principal office located at 25 Kennedy Blvd., Suite 200, East Brunswick, NJ

08816.

## JURISDICTION AND VENUE

4.      The court has subject matter jurisdiction under 28 U.S.C. § 1331 because the

Plaintiff has brought federal claims, including claims under Title VII, 42 U.S.C. § 2000e-2, et al.

and 42 U.S. Code § 1981 ("1981").  The court may exercise supplemental jurisdiction over Ms.

Levy's state and city law claims. 28 U.S.C. § 1367.

5.      Venue is appropriate in the United States District Court for the Southern District

of New York, as the Plaintiff is, and at all relevant times was, a resident of the borough of the

Bronx within New York City, which is within the Southern District of New York.

6.      This court has personal jurisdiction over the Hospital because it is a resident of

New York, including because it is incorporated in New York and its principal place of business

is in New York at 125 Worth St., New York, NY 10013.  Additionally, the Hospital engaged in

and transacted business in the State of New York, including by managing and/or operating a

business in the State of New York and/or by employing Ms. Levy in the State of New York, and

Ms. Levy's causes of action stem largely from the Hospital's business transactions within the

State of New York.  Indeed, Ms. Levy was employed by the Hospital in New York, Ms. Levy

worked in the State of New York, and Ms. Levy was managed and terminated by the Hospital in

the State of New York.

7.      The court has personal jurisdiction over Medical Staffing because it engaged in

and transacted business in the State of New York, including by managing and/or operating a

business in the State of New York and/or by employing Ms. Levy in the State of New York, and

Ms. Levy's causes of action stem largely from Medical Staffing's business transactions within

the State of New York.  Indeed, Ms. Levy was employed by Medical Staffing in New York, Ms.

Levy worked in the State of New York, and Ms. Levy was managed and terminated by Medical

Staffing in the State of New York.  Additionally, Medical Staffing is registered in the State of New York as a foreign corporation doing business in the state.

## STATEMENT OF FACTS

8.      Ms. Levy is an African American woman with dark skin color (darker than the skin color of many other African American individuals).

9.      On or around April 28, 2020, Ms. Levy was hired by the Hospital and Medical Staffing (individually and collectively, the "Company") as a mortuary technician based in the borough of Queens within New York City.

10.     Ms. Levy worked at the Hospital at the Queens Hospital location (located at 82-68, 164th Street, Queens, NY).  The Hospital and Medical Staffing (both collectively and each individually) exercised control over the day-to-day aspects of Ms. Levy's job. For example, employees of both entities (the Hospital and Medical Staffing) had supervisory capacities over Ms. Levy and/or had the ability to direct, discipline, and provide work assignments to Ms. Levy.

11.     For example, both of Ms. Levy's supervisors, Shruti Dimri ("Dimri") and Jennifer Coard ("Coard"), were employees of the Hospital.

12.     Indeed, employees from both entities dictated Ms. Levy's job duties and/or controlled the conditions of Ms. Levy's work on a daily basis.

13.     Furthermore, employees from both entities provided Ms. Levy with training, including onboarding certification sessions required for employees in the hospital facilities.

14.     Additionally, upon information and belief, both entities played a role in setting pay, maintaining personnel files, and making hiring and firing decisions related to Ms. Levy.

15.     As such, at all relevant times from April 2020 on, Ms. Levy was jointly employed by the Hospital and Medical Staffing.

16.     At all relevant times, the Company (including each of the Hospital and Medical Staffing, both individually and collectively) employed 15 or more employees during 20 or more weeks within the current or preceding calendar years.

17.     Indeed, at all relevant times, the Company (including each of the Hospital and Medical Staffing, both individually and collectively) employed 500 or more employees.

18.     At all relevant times, Ms. Levy was a qualified employee and her job performance was satisfactory.

19.     However, shortly after Ms. Levy's hiring, her supervisor Dimri began to treat Ms. Levy in a discriminatory manner due to her race and/or color.

20.     Dimri was not the person who hired Ms. Levy and is a woman of South Asian (Indian) race and ancestry with skin color lighter than Ms. Levy's.

21.     Importantly, Dimri was the person in charge whenever Coard was not around, which was frequently.  As such, Dimri frequently served as Ms. Levy's direct supervisor.

22.     On or around May 6, 2020, Ms. Levy was in the mortuary loading bodies for transport.

23.     While doing this task, Dimri came into the mortuary and looked at Ms. Levy and said, "Niggers need to do more calls," referring to the speed at which Ms. Levy was loading bodies for transport.

24.     Ms. Levy was deeply hurt by this harassing and discriminatory comment and raised protected concerns to Dimri that the use of this racial slur was extremely discriminatory against her race and color.

25.     Dimri ignored Ms. Levy's protected concerns and told her to keep working.

26.    During the week, Dimri would repeatedly call Ms. Levy "nigger" instead of using her actual name.

27.    Additionally, Dimri would frequently refer to other African American and/or black employees as "niggers."

28.    Ms. Levy continued to raise protected concerns to Dimri that these overtly discriminatory comments upset her but was repeatedly ignored.

29.    The next week, Dimri began to reprimand Ms. Levy for the slightest of alleged infractions, including coming back to work five minutes after she was allegedly supposed to come back from a lunch break.

30.    Dimri did not reprimand non-African American and/or non-black employees for the same conduct.  Indeed, she permitted non-African American employees such as Melissa (last name unknown, "Melissa") to come back exceedingly late from lunch or to not come in for her shift at all.

31.    Melissa is a woman of South Asian (Indian) race and ancestry with skin color lighter than that of Ms. Levy.

32.    On or around May 15, 2020, shocked by these overtly discriminatory comments and discriminatory disparate treatment, and frustrated that the protected concerns Ms. Levy had already raised to Dimri were not being listened to, Ms. Levy contacted Dimri's supervisor, Coard.

33.    Ms. Levy raised protected concerns to Coard that Dimri had been repeatedly calling her "nigger" instead of using Ms. Levy's actual name and had referred to the other few African Americans in the Company's location as "niggers" as well.

34.    Coard ignored Ms. Levy's protected concerns and called her a liar.

35.     Shocked that Coard was not taking her protected concerns seriously, Ms. Levy raised protected concerns to Coard that she (Coard) was treating her (Ms. Levy) differently due to her race and color.

36.     Coard ignored Ms. Levy's protected concerns.

37.     On or around May 20, 2020, while Ms. Levy was waiting for a funeral director to bring a body to the mortuary, Ms. Levy was looking at a whiteboard giving the performance numbers for each of the employees at the Company's location.

38.     Written on the whiteboard was the statement, "Good job transport," for the great numbers that transport had put up the following week.

39.     When Dimri passed the board, she looked at the comment and stated that she should write a quote on the board stating, "Niggers need to mind their own business," while looking at Ms. Levy.

40.     Shocked, Ms. Levy again raised protected concerns to Coard that Dimri had been repeatedly calling her "nigger" instead of using her (Ms. Levy's) actual name and reiterated that Dimri had referred to the other few African Americans employees in the Company's location as "niggers" as well.

41.     Coard stated that she would look into Ms. Levy's protected concerns and instructed Ms. Levy to write a statement describing the discriminatory incidents that had taken place with Dimri.

42.     Ms. Levy wrote a statement for Coard and emailed it to her that day.  Ms. Levy then had a meeting with Coard to discuss the specifics of Ms. Levy's statement.

43.     The next day, on or around May 21, 2020, Coard called Ms. Levy into her office.

44.     Instead of addressing the statement Ms. Levy had submitted as part of her discrimination and harassment complaints or addressing any of the protected concerns Ms. Levy had raised about the discriminatory actions of Dimri towards Ms. Levy's race and color, Coard stated that Ms. Levy was terminated.

45.     Coard did not state a reason for the termination.

46.     Shocked, Ms. Levy raised protected concerns to Coard that this termination was clearly due to her race and also in retaliation for raising protected concerns, as this termination was occurring quickly after she (Ms. Levy) raised protected concerns to Coard one day earlier about the harassing and discriminatory actions of Dimri towards her (Ms. Levy) related to her race and color.

47.     Coard ignored Ms. Levy's protected concerns and re-stated that Ms. Levy was terminated.

48.     Therefore, Ms. Levy was involuntarily terminated from the Company on May 21, 2020.

49.     Upon information and belief, Ms. Levy was replaced by a non-African American individual with lighter skin color than Ms. Levy.

50.     On March 9, 2021, Ms. Levy timely filed a Charge of Discrimination with the New York City Commission on Human Rights ("NYCCHR") and cross-filed this charge with the United States Equal Employment Opportunity Commission ("EEOC").

51.     On September 14, 2021, the NYCCHR granted Ms. Levy an administrative closure.

52.     On October 25, 2021, the EEOC issued Ms. Levy a Right to Sue letter.

53.     This lawsuit is timely filed.

# COUNT I

## (Race and Color Discrimination in Violation of Title VII, 42 U.S.C. §§2000e, et seq.)

## Plaintiff v. All Defendants (the Hospital and Medical Staffing)

54.    The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

55.    During all relevant periods, the Company (including the Hospital and Medical Staffing both individually and collectively) was an employer under Title VII, 42 U.S.C. §§2000e, et seq. (hereinafter, "Title VII") because it was a person engaged in an industry affecting commerce and had fifteen or more employees for each working day in each of twenty or more calendar weeks during the relevant calendar years.

56.    The Company (including the Hospital and Medical Staffing both individually and collectively), by and through its agents, harassed and discriminated against Ms. Levy with respect to her compensation, terms, conditions, or privileges of employment, because of Ms. Levy's race (African American) and/or color (black).

57.    More specifically, by way of illustration, the Company subjected Ms. Levy to a pattern of harassment including, but not limited to, by allowing employees, including her supervisor Dimri, to subject Ms. Levy to harassing comments, including calling her a "nigger" on multiple occasions.

58.    Ms. Levy was further subjected to adverse actions, including, but not limited to, a harassing and hostile work environment, unwarranted reprimands, and the termination of her employment, in a discriminatory manner because of her race and/or color.

59.    The Company acted with malice and/or with reckless indifference to the federally protected rights of Ms. Levy.

60.     As a direct and proximate result of the Company's violations of Title VII, Ms. Levy has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, other monetary harms, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

61.     Ms. Levy seeks all damages to which she is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), diminished earning capacity, injury to reputation, other monetary damages, compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), punitive damages, attorneys' fees, interest, and costs.

## COUNT II

**(Race and Color Discrimination in Violation of 42 U.S.C. § 1981, et seq.)**

**Plaintiff v. All Defendants (the Hospital and Medical Staffing)**

62.     The Plaintiff herein incorporates all paragraphs above and below as if set forth fully herein.

63.     During all relevant periods, the Company (including the Hospital and Medical Staffing both individually and collectively) were persons under the meaning of 42 U.S.C. § 1981, et seq. (hereinafter, "Section 1981").

64.     The Company (including the Hospital and Medical Staffing both individually and collectively) harassed and discriminated against Ms. Levy with respect to her compensation, terms, conditions, or privileges of employment, because of Ms. Levy's race (African American) and/or color (black).

65.     More specifically, by way of illustration, the Company subjected Ms. Levy to a pattern of harassment including, but not limited to, by allowing employees, including her supervisor Dimri, to subject Ms. Levy to harassing comments, including calling her a "nigger" on multiple occasions.

66.     Ms. Levy was further subjected to adverse actions, including, but not limited to, a harassing and hostile work environment, unwarranted reprimands, and the termination of her employment, in a discriminatory manner because of her race and/or color.

67.     Defendants acted with malice and/or with reckless indifference to the federally protected rights of Ms. Levy.

68.     As a direct and proximate result of the Defendants' violations of Section 1981, Ms. Levy has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

69.     Ms. Levy seeks all damages to which she is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), diminished earning capacity, injury to reputation, other monetary damages, compensatory damages (including, but not limited to, future pecuniary losses and other nonpecuniary losses), punitive damages, attorneys' fees, interest, and costs.

**COUNT III**

**(Race and Color Discrimination in Violation under New York State Human Rights Law, Executive Article 15, Section 296))**

**Plaintiff v. All Defendants (the Hospital and Medical Staffing)**

70.     The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

71.     The Company (including the Hospital and Medical Staffing both individually and collectively) is an employer under the New York State Human Rights Law (NYSHRL) because it (including each of the Hospital and Medical Staffing) employs four or more persons.

72.     Ms. Levy is African American in terms of her race and black in terms of her skin color.

73.     The Company (including the Hospital and Medical Staffing both individually and collectively) harassed and discriminated against Ms. Levy with respect to her compensation, terms, conditions, or privileges of employment, because of Ms. Levy's race (African American) and/or color (black).

74.     More specifically, by way of illustration, the Company subjected Ms. Levy to a pattern of harassment including, but not limited to, by allowing employees, including her supervisor Dimri, to subject Ms. Levy to harassing comments, including calling her a "nigger" on multiple occasions.

75.     Ms. Levy was further subjected to adverse actions, including, but not limited to, a hostile work environment, unwarranted reprimands, and the termination of her employment, in a discriminatory manner because of her race and/or color.

76.     The Defendants' actions were wanton, malicious, and/or oppressive.

77.     The Defendants acted willfully and/or with reckless disregard to the state protected rights of Ms. Levy.

78.     As a direct and proximate result of the Defendants' violation of the NYSHRL, Ms. Levy has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, other monetary harms, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

79.     Ms. Levy seeks all damages to which she is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), diminished earning capacity, injury to reputation, other monetary damages, compensatory damages (including, but not limited to, future pecuniary losses and other nonpecuniary losses), damages for emotional distress (including, but not limited to, damages for emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life), punitive damages, attorneys' fees, interest, and costs.

## COUNT IV

**(Race and Color Discrimination under New York City Human Rights Law, Title 8 of the Administrative Code of the City of New York)**

**Plaintiff v. All Defendants (the Hospital and Medical Staffing)**

80.      The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

81.     The Company (including the Hospital and Medical Staffing both individually and collectively) was an employer under the New York City Human Rights Law ("NYCHRL") because, at all relevant times, it employed four or more employees.

82.   Ms. Levy is African American in terms of her race and black in terms of her color.

83.   The Company (including the Hospital and Medical Staffing both individually and collectively) harassed and discriminated against Ms. Levy with respect to her compensation, terms, conditions, or privileges of employment, because of Ms. Levy's race (African American) and/or color (black).

84.   More specifically, by way of illustration, the Company subjected Ms. Levy to a pattern of harassment including, but not limited to, by allowing employees, including her supervisor Dimri, to subject Ms. Levy to harassing comments, including calling her a "nigger" on multiple occasions.

85.   Ms. Levy was further subjected to adverse actions, including, but not limited to, a hostile work environment, unwarranted reprimands, and the termination of her employment, in a discriminatory manner because of her race and/or color.

86.   The Defendants' actions were wanton, malicious, and/or oppressive.

87.   The Defendants acted willfully and/or with reckless disregard to the city protected rights of Ms. Levy.

88.   As a direct and proximate result of the Defendants' violation of the NYCHRL, Ms. Levy has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, other monetary harms, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

89.   Ms. Levy seeks all damages to which she is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), diminished earning capacity, injury to reputation, other monetary damages, compensatory

damages (including, but not limited to, future pecuniary losses and other nonpecuniary losses), damages for emotional distress (including, but not limited to, damages for emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life), punitive damages, attorneys' fees, interest, and costs.

## COUNT V

### (Retaliation in Violation of Title VII, 42 U.S.C. §§2000e, et seq.)

### Plaintiff v. All Defendants (the Hospital and Medical Staffing)

90.     The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

91.     During all relevant periods, the Company (including the Hospital and Medical Staffing both individually and collectively) was an employer under Title VII because it was a person engaged in an industry affecting commerce and had fifteen or more employees for each working day in each of twenty or more calendar weeks during the relevant calendar years.

92.     Ms. Levy engaged in protected activity under Title VII, including, but not limited to, by expressing protected concerns regarding, and otherwise opposing, the harassment and discrimination she and others were being subjected to, based on the race and color of herself and others.

93.     The Company discriminated against and/or retaliated against Ms. Levy for engaging in activity protected under Title VII, including, but not limited to, by expressing concerns regarding, and otherwise opposing, the harassment and discrimination both she herself and others were subjected to, based on the race and color of she herself and others.

94.     The Defendants unlawfully coerced, intimidated, threatened and/or interfered with Ms. Levy's exercising of or enjoyment of rights granted by the Title VII.

95.     More specifically, the Defendants discriminated and/or retaliated against Ms. Levy for engaging in activity protected under Title VII, including, but not limited to, by allowing employees, including her supervisor Dimri, to subject Ms. Levy to harassing comments, including calling her a "nigger" on multiple occasions.

96.     Ms. Levy was further subjected to adverse actions, including, but not limited to, a hostile work environment, unwarranted reprimands, and the termination of her employment, in a in a retaliatory manner for engaging in activity protected under Title VII.

97.     The Defendants acted with malice and/or with reckless indifference to the federally protected rights of Ms. Levy.

98.     As a direct and proximate result of the Defendants' violations of Title VII, Ms. Levy has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

99.     The Plaintiff seeks all damages to which she is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), diminished earning capacity, injury to reputation, other monetary damages, compensatory damages (including, but not limited to, future pecuniary losses and other nonpecuniary losses), punitive damages, attorneys' fees, interest, and costs.

**COUNT VI**

**(Retaliation in Violation of 42 U.S.C. § 1981, et seq.)**

**Plaintiff v. All Defendants (the Hospital and Medical Staffing)**

100.    The Plaintiff herein incorporates all paragraphs above and below as if set forth fully herein.

101.    During all relevant periods, the Company (including the Hospital and Medical Staffing both individually and collectively) were persons under the meaning of Section 1981.

102.    Ms. Levy engaged in protected activity under Section 1981, including, but not limited to, by expressing concerns regarding, and otherwise opposing, the harassment and discrimination herself and others were subjected to, based on the race and color of herself and others.

103.    The Defendants unlawfully coerced, intimidated, threatened and/or interfered with Ms. Levy's exercising of or enjoyment of rights granted by the Section 1981.

104.    More specifically, the Defendants discriminated and/or retaliated against Ms. Levy for engaging in activity protected under the Section 1981, including, but not limited to, by allowing employees, including her supervisor Dimri, to subject Ms. Levy to harassing comments, including calling her a "nigger" on multiple occasions.

105.    Ms. Levy was further subjected to adverse actions, including, but not limited to, a hostile work environment, unwarranted reprimands, and the termination of her employment, in a in a retaliatory manner for engaging in protected activity under Section 1981.

106.    The Defendants acted with malice and/or with reckless indifference to the federally protected rights of Ms. Levy.

107.    As a direct and proximate result of the Defendants' violations of Section 1981, Ms. Levy has suffered and continues to suffer damages, including, but not limited to, lost

compensation and benefits, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

108.    The Plaintiff seeks all damages to which she is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), diminished earning capacity, injury to reputation, other monetary damages, compensatory damages (including, but not limited to, future pecuniary losses and other nonpecuniary losses), punitive damages, attorneys' fees, interest, and costs.

## COUNT VII

**(Retaliation for Engaging in Protected Activity in Violation of New York State Human Rights Law, Executive Article 15, Section 296)**

**Plaintiff v. All Defendants (the Hospital and Medical Staffing)**

109.    The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

110.    Ms. Levy engaged in protected activity(ies) under the NYSHRL including, but not limited to, by expressing concerns regarding, and otherwise opposing, the harassment and discrimination herself and others were subjected to, based on the race and color of herself and others.

111.    The Defendants unlawfully coerced, intimidated, threatened and/or interfered with Ms. Levy's exercising of or enjoyment of rights granted by the NYSHRL.

112.    More specifically, the Defendants discriminated and/or retaliated against Ms. Levy for engaging in activity protected under the NYSHRL, including, but not limited to, by allowing employees, including her supervisor Dimri, to subject Ms. Levy to harassing comments, including calling her a "nigger" on multiple occasions.

113.    Ms. Levy was further subjected to adverse actions, including, but not limited to, a hostile work environment, unwarranted reprimands, and the termination of her employment, in a in a retaliatory manner for engaging in protected activity under the NYSHRL.

114.    The Defendants' actions were wanton, malicious, and/or oppressive.

115.    The Defendants acted willfully and/or with reckless disregard to the state protected rights of Ms. Levy.

116.    As a direct and proximate result of the Defendants' violation of the NYSHRL, Ms. Levy has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

117.    Ms. Levy seeks all damages to which she is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), diminished earning capacity, injury to reputation, other monetary damages compensatory damages (including, but not limited to, future pecuniary losses and other nonpecuniary losses), damages for emotional distress (including, but not limited to, damages for emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life), punitive damages, attorneys' fees, interest, and costs.

## COUNT VIII

**(Retaliation for Engaging in Protected Activity in Violation of New York City Human Rights Law, Title 8 of the Administrative Code of the City of New York)**

**Plaintiff v. All Defendants (the Hospital and Medical Staffing)**

118.    The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

119.    Ms. Levy engaged in protected activity(ies) under the NYCHRL, including, but not limited to, by expressing concerns regarding, and otherwise opposing, the harassment and discrimination herself and others were subjected to, based on the race and color of herself and others.

120.    The Defendants unlawfully coerced, intimidated, threatened and/or interfered with Ms. Levy's exercising of or enjoyment of rights granted by the NYCHRL.

121.    More specifically, the Defendants discriminated and/or retaliated against Ms. Levy for engaging in activity protected under the NYCHRL, including, but not limited to, by allowing employees, including her supervisor Dimri, to subject Ms. Levy to harassing comments, including calling her a "nigger" on multiple occasions.

122.    Ms. Levy was further subjected to adverse actions, including, but not limited to, a hostile work environment, unwarranted reprimands, and the termination of her employment, in a in a retaliatory manner for engaging in protected activity under the NYCHRL.

123.    The Defendants' actions were wanton, malicious, and/or oppressive.

124.    The Defendants acted willfully and/or with reckless disregard to the city protected rights of Ms. Levy.

125.    As a direct and proximate result of the Defendants' violation of the NYCHRL, Ms. Levy has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

126.    Ms. Levy seeks all damages to which she is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), diminished earning capacity, injury to reputation, other monetary damages compensatory

damages (including, but not limited to, future pecuniary losses and other nonpecuniary losses), damages for emotional distress (including, but not limited to, damages for emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life), punitive damages, attorneys' fees, interest, and costs.

WHEREFORE, the plaintiff, Kristin Levy, respectfully prays that this honorable court:

A. Schedule this matter for trial by jury;

B. Find the Defendants liable on all counts;

C. Award the Plaintiff her lost compensation and benefits (including, but not limited to, back pay and front pay);

D. Award the Plaintiff other monetary damages, including damages for her diminished earning capacity and injury to reputation;

E. Award the Plaintiff damages for her emotional pain, mental anguish, loss of enjoyment of life, suffering, and other emotional distress damages;

F. Award the Plaintiff compensatory damages, including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses;

G. Award the Plaintiff punitive damages;

H. Award the Plaintiff her reasonable attorney's fees;

I. Award the Plaintiff interest and costs;

J. Award the Plaintiff all other damages to which she is entitled; and

K. Grant such further relief as is just and equitable.

Respectfully Submitted,

KRISTEN LEVY

By her attorneys,

THE LAW OFFICES OF WYATT
& ASSOCIATES P.L.L.C

Date:   11/4/2021                        By:      __/s/Timothy J. Brock_ _____


Benjamin J. Wyatt, NY BAR #5604590
BWyatt@Wyattlegalservices.com

Timothy Brock, NY BAR # 5614151
tbrock@wyattlegalservices.com

Trevor R. Brice NY BAR # 5816087
Trevor@wyattlegalservices.com

Main Office
The Law Offices of Wyatt & Associates,
P.L.L.C.
17 Elm Street, Suite C211
Keene, NH 03431
Telephone: (603) 357-1111
Facsimile: (603) 685-2868

New York Office
The Law Offices of Wyatt & Associates,
P.L.L.C.
418 Broadway, 2nd Floor
Albany, NY 12207